# EXHIBIT 1

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY Suffolk Superior Court (Boston) |

| Plaintiff | Anna Feder | Defendant: | Emerson College |
|---|---|---|---|
| ADDRESS: | 54 Fisk Street, Providence, RI 02905 | ADDRESS: | 120 Boylston Street, Boston, MA 02116 |

| Plaintiff Attorney: | Matthew J. Fogelman, Esq. | Defendant: | Brooke Knight |
|---|---|---|---|
| ADDRESS: | Fogelman Law LLC, 189 Wells Avenue, Suite 302, Newton, MA 02459 | ADDRESS: | 700 Harrison Avenue, #602, Boston, MA 02118 |

| BBO: | 653916 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES  ☐ NO |

*If "Other" please describe:

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☐ YES  ☒ NO | ☐ YES  ☒ NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date

1. Total hospital expenses _____

2. Total doctor expenses _____

3. Total chiropractic expenses _____

4. Total physical therapy expenses _____

5. Total other expenses (describe below) _____

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
FILED

SEP 2 2 2021

MICHAEL JOSEPH DONOVAN
CLERK OF COURT

Subtotal (1-5):   To be determined

B. Documented lost wages and compensation to date   To be determined

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages   To be determined

F. Other documented items of damages (describe below)

Emotional distress

TOTAL (A-F):   To be determined   $500,000+

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Plaintiff was discriminated against on the basis of her gender and subjected to retaliation.  Equal Pay Claims as well

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | | Total |

| Signature of Attorney/Unrepresented Plaintiff: X | Date: | September 21, 2021 |
|---|---|---|

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X | Date: | September 21, 2021 |
|---|---|---|

**COMMONWEALTH OF MASSACHUSETTS**
**SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT**

**SUFFOLK, ss.**

21·2156 ∆

ANNA FEDER,

        Plaintiff,

   v.

EMERSON COLLEGE and
BROOKE KNIGHT,

        Defendants.

**CIVIL ACTION NO.**

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
FILED

SEP 2 2 2021

MICHAEL JOSEPH DONOVAN
CLERK OF COURT

## COMPLAINT AND JURY DEMAND

### Introduction

    This is a complaint for equitable and economic damages arising from the Defendants'
violation of the Massachusetts Equal Pay Act, gender discrimination, and subsequent retaliation
against the Plaintiff, pursuant to M.G.L. c. 151B § 4.

    As detailed below, Defendants refused to pay the Plaintiff the same wages as her male
counterpart and retaliated against the plaintiff through extra work and funding cuts after she
complained about the gender discrimination.

### Parties

1.     Plaintiff Anna Feder ("Ms. Feder") is an individual who resides at 54 Fisk Street,
Providence, Rhode Island, 02905.

2.     Defendant Emerson College ("Emerson") is a college located at 120 Boylston
Street, Boston, Massachusetts.

3.      Defendant Brooke Knight is the former chair of the Department of Visual and Media Arts and current Assistant Provost for Faculty Affairs. Upon information and belief, he resides at 700 Harrison Ave, #602, Boston, MA 02118

### Jurisdiction and Venue

4.      The Jurisdiction of this Court is lawful and proper as the Defendant Emerson College is located in Massachusetts.

5.      Venue in Suffolk County is lawful and proper as Defendant Emerson College is located in Suffolk County.

### Factual Background

6.      Ms. Feder was hired by Emerson as the Program Coordinator of the Visual and Media Arts Department.

7.      She has been employed by the College since 2007.

8.      Ms. Feder's current role is Head of Film Exhibition and Festival Programs. She has twenty-three years of experience as a film curator.

9.      Ms. Feder has been responsible for founding and running a successful film exhibition program at Emerson starting in 2012, as well as representing the College to external constituencies including numerous conferences, film festivals and industry events. In addition, she oversees the college film festival and two recurring student programs at the Camden International and Sundance Film Festivals.

10.     She is also currently developing a credit-bearing program to the Cannes film festival through the Emerson College Office of Global Engagement.

11.     Ms. Feder also represents Emerson outwardly in the industry at conferences and is influential in academia. For example, Ms. Feder teaches an experiential learning class at

Emerson on cinema exhibition, which she started at the request of the Dean of the School of Arts based on his understanding of her expertise in the field and has presented her syllabus and course description at a workshop at the annual Arthouse Convergence in 2019. Peers in attendance eagerly asked Ms. Feder questions about her course and approximately half of the 100 attendees requested copies of her syllabus so they could implement her successful teaching methods in their courses and/or programs so that they could craft cinema exhibition courses at peer institutions. The course is currently at capacity for Fall 2021.

12.     Ms. Feder has presented and served on panels at numerous film industry conferences, including the International Film Festival Summit, the University Film Video Association, the Arthouse Convergence, and SXSW. She is also highly visible at various community events, including those hosted by the Film Fatales, the Massachusetts Production Coalition, the Independent Film Festival of Boston and Women in Film and Video New England.

13.     Ms. Feder also exhibits problem-solving skills when dealing with viewer reactions to sensitive subject matter in film screenings, is pioneering a content advisory for the series she oversees that has served as a model for her field, frequently persuades others of the power of communal moviegoing, advises others on complex matters, and demonstrates expertise in her field.

14.     In addition to her other work, Ms. Feder builds rapport between Emerson and numerous community groups, has and maintains direct relationships with faculty, staff, and students, serves on numerous committees in top professional organizations in her field, started her own college-wide committee for staff and faculty who run events on campus, and founded,

operated, and maintained Emerson's "Bright Lights Film Series," a unique film exhibition program of which Emerson enjoys the benefits and prestige.

15.    Since becoming employed by Emerson in 2007, Ms. Feder has become the expert at the College for film exhibition. Colleagues frequently go to her for advice on licensing and promoting film screenings, and she has built a reputation for being the most knowledgeable at the College regarding upcoming exhibition projects.

16.    Ms. Feder also serves as a community liaison, having served on the boards of multiple community organizations, including Women in Film and Video New England, and Press Pass TV. She has also served as the director of the Boston Underground Film Festival, a curator for the Northampton Independent, San Francisco Indie, and Boston LGBTQ film festivals, a juror at numerous film festivals including Fantasia and the Seattle International Film Festival, and the main organizer for Queering in the Cinema, a professional organization for queer identified exhibitors and distributors. She also served on the faculty advisory board for the Bates College Film Festival.

17.    Mr. Knight became Ms. Feder's supervisor in 2012. Knight was Ms. Feder's direct supervisor until in or around July 2019. He continuously upheld his position to the upper administration that Ms. Feder should not be promoted although her work with Emerson was clearly deserving of a higher title and corresponding pay.

18.    While Mr. Knight was Ms. Feder's supervisor, he claimed to support her yet undermined her to the upper administration. She was told in an informal off the record conversation with the Vice President in charge of human resources that it would be "easier" to adjust her position if she had support from her supervisor. While Knight was Ms. Feder's supervisor, he insisted and expected that she be willing to perform administrative tasks that are

outside the scope of her job duties. Ms. Feder is not "support staff," but she was constantly asked to "pitch in" and help the support staff. Upon information and belief, Knight did not ask the other salaried male subordinates to perform the types of tasks he expected Ms. Feder to perform.

19.    Ms. Feder's current supervisor is Cristina Kotz Cornejo. She became Ms. Feder's supervisor in or around July 2020. She is the chair of the Department of Visual and Media Arts.

20.    Ms. Feder's current role has been classified as a "Grade 16" position, meaning that she is classified as an individual contributor without "expert" status. Under this ranking, Ms. Feder's expertise is undermined by Emerson. Under Grade 16, the College is disregarding the fact that Ms. Feder has autonomy in her professional decision-making and frequently takes on and leads large projects, which is inconsistent with the Grade 16 position. Contrastingly, Grade 16 employees receive consistent guidance, do not have full autonomy in their decision-making, and are only responsible for smaller projects than Ms. Feder.

21.    However, under Emerson's current "Job Description Matrix," Ms. Feder's role and responsibilities fit more closely in the "Grade 18" category, which would classify her as an "expert" with "expert-level professional providing expert content/professional leadership on complex assignments and projects." She fits under this category because she has an M.F.A in film production when only a Bachelor's Degree is required, is the expert her colleagues consult regarding exhibition questions and logistics, is responsible for collaborating on the development of grant and corporate funding proposals and is the founder and leader of many large projects across the College which build's Emerson's rapport and makes the College a leader in cinema exhibition.

22.    She has also been profiled in the Arts section of the Boston Globe and was identified in a cover story in the Weekly Dig as one of five premier film curators in the Boston area, showing the community-wide acknowledgement of Ms. Feder's high level of expertise.

23.    Additionally, Ms. Feder works with various departments within the College to collaborate on film screenings, and solicits faculty and administrative personnel from the departments of Student Life, Social Justice Center, alumni relations, the Elma Lewis Center for Civic Engagement and others to participate in and help develop panels for film screenings, demonstrating her role in representation of the department to others within the College.

24.    Ms. Feder also works with outside cultural groups such as the French Cultural Center, the Goethe institute and the United Nations Association of Greater Boston to develop ideas for, and participants in, presentations and panels for the development of ideas in film screenings, which further demonstrates her role in representation of Emerson to the Boston community.

25.    Since Ms. Feder's responsibilities and work fit more closely with the "Grade 18" category, her salary under "Grade 16" is not the accurate nor appropriate salary for Ms. Feder based on the work she does, and the level of expertise required. The College callously accepts Ms. Feder's contributions while refusing to pay her on an accurate scale.

26.    Furthermore, Ms. Feder's colleague, Leonard Manzo, holds a position at the College that is smaller in scale compared to Ms. Feder's role, yet he is paid a greater salary than Ms. Feder.

27.    Upon information and belief, Ms. Feder's salary is significantly less than Mr. Manzo's salary.

28.     While Ms. Feder and Mr. Manzo's roles at Emerson College are not identical, Ms. Feder's position requires a greater level of skill, effort, and responsibility compared to Mr. Manzo.

29.     Mr. Manzo's job has no college-wide or external component, where he serves only students and faculty within the department.

30.     Mr. Manzo has been with Emerson for 9.5 years compared to Ms. Feder's 14 years.

31.     Ms. Feder has both a Bachelor's degree and a Master's of Fine Arts degree, while Mr. Manzo has neither.

32.     When Ms. Feder discovered that she was paid significantly less than Mr. Manzo, Ms. Feder asked her superior at Emerson to rectify the imbalance.

33.     Emerson refused to adjust Ms. Feder's title and salary despite the clear gender inequity.

34.     Upon information and belief, Ms. Feder is also paid less than another male colleague, Eric Weiss.

35.     Mr. Weiss earns approximately $15,000 more dollars than her per year while he has a less demanding role than Ms. Feder. Mr. Weiss has an administrative role and is responsible for overall course planning and administration within the department. Unlike Ms. Feder, he is not responsible for anything public-facing with the exception of his participation in auditions for the department. He does not engage in finding or applying for funding for the department, or any role representing the department externally to the rest of the College or the public.

36.     While Ms. Feder has more expertise and has a much broader, more complex role than Mr. Weiss, he is ranked at a Grade 17.

37.     However, Emerson refused, and continues to refuse, to correct the pay disparity between Ms. Feder and her male colleagues, even after two lengthy job review processes initiated by Ms. Feder.

38.     Ms. Feder was never given a reason for the denial in rectifying the pay differences between her and her male colleagues.

39.     In or around May 2019, Ms. Feder sought a title change from "Program Manager" to "Director of Programming." Instead, Emerson granted Ms. Feder with the title "Assistant Director of Programming" with no pay or grade level increase.

40.     Around July 2020, Ms. Kotz Cornejo became Ms. Feder's new supervisor.

41.     Ms. Kotz Cornejo outwardly supported Ms. Feder's claims to Emerson that she be recognized with a title change and pay increase to better match her duties, responsibilities, and achievements at Emerson. Ms. Kotz Cornejo noticed that Ms. Feder was acting more like a director to the department and was not an assistant to anyone, and thus her title as the Assistant Director of Programming was meaningless.

42.     On April 26, 2021, Ms. Feder again petitioned Emerson to change her title to "Director of Programming" and increase pay. They again refused, even after continuous support from Ms. Cornejo to change her classification and the additional evidence provided by Ms. Feder that she is indeed an expert and should be classified as a Grade 18 with the associated title and pay changes. Emerson again refused to acknowledge Ms. Feder's expertise and the scope of her role at the College.

43.    Ms. Kotz Cornejo wrote to the Emerson Human Resources Department on or around May 19, 2021 and stated that Ms. Feder's title of "Assistant Director" did not represent the work that she currently does and that Ms. Feder's work would more accurately be classified as "Director of Programming" pursuant to Emerson's policies.

44.    Despite Ms. Kotz Cornejo supporting Ms. Feder's requests and corroborating the factual basis for her requests, Emerson continues to refuse to correct the pay disparity.

45.    Again, on June 24, 2021, Ms. Feder petitioned Emerson to change her title and pay. Emerson changed Ms. Feder's title from "Assistant Director" to "Head of Film Exhibition & Festival Programs." However, Emerson refused to give Ms. Feder the "Director of Programming" title because it comes with an increase in pay and grade level, despite recognizing her exceptional work for the school and the director responsibilities that she currently undertakes.

46.    Not only has Emerson refused to pay Ms. Feder equally, or greater, to her male colleagues and subordinates, but Emerson and Knight also retaliated against Ms. Feder since her complaint about the unequal pay by suddenly giving her negative performance reviews, reducing her operating budget, and threatening further cuts in the future.

47.    The conduct by Emerson and Knight have taken away from Ms. Feder's enjoyment of and ability to perform her job and added tremendous stress to her life.

48.    Ms. Feder properly exhausted her administrative remedies by timely filing a charge with the Massachusetts Commission Against Discrimination.

## COUNT I:  GENDER DISCRIMINATION IN
## VIOLATION OF M.G.L. c. 151B § 4

49.    Plaintiff restates the foregoing allegations as if fully incorporated herein.

50.    The above described conduct violates M.G.L. c. 151B § 4 because Ms. Feder has

been subjected to sex discrimination and then retaliated against after complaining about the

discriminatory behavior.

## COUNT II: UNEQUAL PAY IN
## VIOLATION OF MASS. G.L. c. 151B  § 4

51.    Plaintiff restates the foregoing allegations as if fully incorporated herein.

52.    Defendants' actions violate the Massachusetts Equal Pay Act, as Ms. Feder is not

being paid equally to a male colleague / colleagues whose job requires similar skill, effort, and

responsibility performed under similar working conditions.

## COUNT III: UNLAWFUL RETALIATION IN
## VIOLATION OF MASS. G.L. c. 151B  § 4 (4)

53.    Plaintiff restates the foregoing allegations as if fully incorporated herein.

54.    Ms. Feder engaged in protected activity, including but not limited to her attempt

to engage in dialogue with the Defendants regarding her inequitable employment rank and

salary.

55.    Ms. Feder's dialogue led the Defendants to unlawfully retaliate against her

through negative performance reviews and reduction of her operating budget.

## Prayers for Relief

WHEREFORE, Plaintiff Anna Feder respectfully requests that the Court grant her the

following relief:

1. Enter judgment in her favor and against the Defendants on all counts of the complaint;

2. Increase her salary to be compliant with the Massachusetts Equal Pay Act;

3. Award monetary damages to Plaintiff in an amount determined by the Court, including treble damages on lost wages, attorneys' fees, costs, emotional distress damages, punitive damages, and any other remedies available;

4. Such other and further relief as the Court deems proper.

### Jury Demand

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

Respectfully submitted,

ANNA FEDER,

By her attorney,

Matthew J. Fogelman (BBO 653916)
FOGELMAN LAW LLC
189 Wells Avenue, Suite 302
Newton, MA 02459
617-559-0201
mjf@fogelmanlawfirm.com

Dated: September 21, 2021